**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABBVIE INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 1:23-cv-02836 |
| | § | |
| v. | § | Hon. Judge Jorge L. Alonso |
| | § | |
| PAYER MATRIX, LLC, | § | Hon. Magistrate Young B. Kim |
| | § | |
| Defendant. | § | |

**DECLARATION OF DAVID MITCHELL POELL IN OPPOSITION TO**
**ABBVIE INC.'S MOTION FOR PRELIMINARY INJUNCTION**

I, David Mitchell Poell, declare and state as follows:

1.      I am a Partner at Sheppard, Mullin, Richter & Hampton LLP and outside litigation counsel for Defendant Payer Matrix, LLC ("Payer Matrix") in the above-captioned litigation.  I submit this declaration in opposition to the Motion for Preliminary Injunction filed by Plaintiff AbbVie Inc. ("AbbVie").

2.       Attached hereto as <u>Exhibit</u> 1 is a true and correct copy of excerpts of the deposition transcript of AbbVie's Fed. R. Civ. P. 30(b)(6) Representative, Anne Najjar, dated September 29, 2023.

3.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of an email attaching a presentation regarding alternative funding programs created by Hayden Consulting Group ("HCG"), dated January 11, 2022 (AbbVie00023157-208).

4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of an email attaching AbbVie's alternate funding communication strategy presentation, dated May 20, 2022 (AbbVie00017388-89).

5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of an AbbVie internal email regarding an alternative funding presentation, dated May 20, 2022 (AbbVie00021434-35).

6.     Attached hereto as <u>Exhibit 5</u> is a true and correct copy of an AbbVie internal email regarding the growth of alternative funding programs, dated December 15, 2022 (AbbVie00017329-32).

7.     Attached hereto as <u>Exhibit 6</u> is a true and correct copy of an email attaching HCG's updated presentation on alternative funding programs, dated January 8, 2023 (AbbVie00023485-513).

8.     Attached hereto as <u>Exhibit 7</u> is a true and correct copy of email correspondence between HCG and AbbVie regarding an updated alternate funding presentation, dated January 10, 2023 (AbbVie00023542-71).

9.     Attached hereto as <u>Exhibit 8</u> is a true and correct copy of an email attaching AbbVie's internal presentation involving an analysis on alternative funding vendors, dated January 11, 2023 (AbbVie00022730-792).

10.     Attached hereto as <u>Exhibit 9</u> is a true and correct copy of a press release regarding AbbVie's First-Quarter 2023 Financial Results, dated April 27, 2023.

11.     Attached hereto as <u>Exhibit 10</u> is a true and correct copy of an email attaching AbbVie's alternative funding message map, dated May 21, 2022 (AbbVie00017390-93).

12.     Attached hereto as <u>Exhibit 11</u> is a true and correct copy of an email attaching AbbVie's Alternative Funding Overview and Alignment presentation, dated July 15, 2022 (AbbVie00021898-938).

13.     Attached hereto as <u>Exhibit 12</u> is  true and correct copy of excerpts of the deposition transcript of Payer Matrix's Fed. R. Civ. P. 30(b)(6) Representative, Jennifer B. Hoefner, dated September 19, 2023.

14.     Attached hereto as <u>Exhibit 13</u> is a true and correct copy of an AbbVie internal email chat regarding the potential denial of a PAP application, dated May 24, 2023 (AbbVie00020870-71).

-2-

15.     Attached hereto as <u>Exhibit 14</u> is a true and correct copy of an AbbVie internal email chat regarding the potential denial of a PAP application, dated May 8, 2023 (AbbVie00020786-87).

16.     Attached hereto as <u>Exhibit 15</u> is a true and correct copy of AbbVie's "Talking Points," dated January 2023 (AbbVie00017366-67).

17.     Attached hereto as <u>Exhibit 16</u> is a true and correct copy of a screenshot from AbbVie's website listing the PAP eligibility criteria (AbbVie00023151-55).

18.     Attached hereto as <u>Exhibit 17</u> is a true and correct copy of excerpts of news articles and press releases regarding AbbVie's practices.

19.     Attached hereto as <u>Exhibit 18</u> is a true and correct copy of AbbVie's summary case 01889513 call notes (AbbVie00008516-18).

20.     Attached hereto as <u>Exhibit 19</u> is a true and correct copy of a AbbVie's summary case 03307294 call notes (AbbVie00008675-76).

21.     Attached hereto as <u>Exhibit 20</u> is a true and correct copy of AbbVie's summary case 01881282 call notes (AbbVie00008899-901).

22.     Attached hereto as <u>Exhibit 21</u> is a true and correct copy of excerpts of various PAP applications (AbbVie00004518-88).

23.     Attached hereto as <u>Exhibit 22</u> is a true and correct copy of a PAP application package, dated January 4, 2023 (AbbVie00000889-894).

24.     Attached hereto as <u>Exhibit 23</u> is a true and correct copy of a PAP application package, dated January 23, 2023 (AbbVie00000947-957).

25.     Attached hereto as <u>Exhibit 24</u> is a true and correct copy of a PAP application package, dated January 3, 2023 (AbbVie00000959-969).

26.     Attached hereto as <u>Exhibit 25</u> is a true and correct copy of AbbVie's PAP application denial letter, dated March 3, 2023 (AbbVie00002270-72).

27.     Attached hereto as <u>Exhibit 26</u> is a true and correct copy of HCG's presentation regarding alternative funding initiatives economics, dated December 20, 2022 (AbbVie00023476-84).

28.     Attached hereto as <u>Exhibit 27</u> is a true and correct copy of a PAP application package, dated February 1, 2022 (AbbVie00008202).

29.     Attached hereto as <u>Exhibit 28</u> is a true and correct copy of AbbVie's PAP application denial letter, dated March 2, 2023 (AbbVie00002243-45).

30.     Attached hereto as <u>Exhibit 29</u> is a true and correct copy of a PAP application package, dated January 24, 2023 (AbbVie00004501-07).

31.     Attached hereto as <u>Exhibit 30</u> is a true and correct copy of Payer Matrix's outside counsel letter to AbbVie's General Counsel, dated March 28, 2023.

32.     Attached hereto as <u>Exhibit 31</u> is a true and correct copy of email correspondence regarding a AbbVie PAP application denial letter, dated January 19, 2023 (PMX0183796-802).

33.     Attached hereto as <u>Exhibit 32</u> is a true and correct copy of AbbVie's Proposed Order Granting AbbVie's Motion for Preliminary Injunction as to Payer Matrix.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on November 29, 2023 in Chicago, Illinois.


*/s David M. Poell*
*Counsel for Defendant*

# FILED UNDER SEAL

# Exhibit 1

# FILED UNDER SEAL

# Exhibit 2

# FILED UNDER SEAL

# Exhibit 3

# FILED UNDER SEAL

# Exhibit 4

# FILED UNDER SEAL

# Exhibit 5

# FILED UNDER SEAL

# Exhibit 6

# FILED UNDER SEAL

# Exhibit 7

# FILED UNDER SEAL

# Exhibit 8

# Exhibit 9



**PRESS RELEASE**

**AbbVie Reports First-Quarter 2023 Financial Results**

- *Reports First-Quarter Diluted EPS of $0.13 on a GAAP Basis, a Decrease of 94.8 Percent; Adjusted Diluted EPS of $2.46, a Decrease of 22.2 Percent; These Results Include an Unfavorable Impact of $0.08 Per Share related to Acquired IPR&D and Milestones Expense*

- *Delivers First-Quarter Net Revenues of $12.225 Billion, a Decrease of 9.7 Percent on a Reported Basis and 8.3 Percent on an Operational Basis*

- *First-Quarter Global Net Revenues from the Immunology Portfolio Were $5.587 Billion, a Decrease of 9.0 Percent on a Reported Basis, or 7.8 Percent on an Operational Basis; Global Humira Net Revenues Were $3.541 Billion; Global Skyrizi Net Revenues Were $1.360 Billion; Global Rinvoq Net Revenues Were $686 Million*

- *First-Quarter Global Net Revenues from the Hematologic Oncology Portfolio Were $1.416 Billion, a Decrease of 14.0 Percent on a Reported Basis, or 12.9 Percent on an Operational Basis; Global Imbruvica Net Revenues Were $878 Million; Global Venclexta Net Revenues Were $538 Million*

- *First-Quarter Global Net Revenues from the Neuroscience Portfolio Were $1.695 Billion, an Increase of 13.9 Percent on a Reported Basis, or 15.0 Percent on an Operational Basis; Global Botox Therapeutic Net Revenues Were $719 Million; Global Vraylar Net Revenues Were $561 Million*

- *First-Quarter Global Net Revenues from the Aesthetics Portfolio Were $1.300 Billion, a Decrease of 5.4 Percent on a Reported Basis, or 2.0 Percent on an Operational Basis; Global Botox Cosmetic Net Revenues Were $659 Million; Global Juvederm Net Revenues Were $355 Million*

- *Raises 2023 Adjusted Diluted EPS Guidance Range from $10.62 - $11.02 to $10.72 - $11.12, which Includes an Unfavorable Impact of $0.08 Per Share Related to Acquired IPR&D and Milestones Expense Incurred During the First Quarter 2023*

**NORTH CHICAGO, Ill.,** April 27, 2023 – AbbVie (NYSE:ABBV) announced financial results for the first quarter ended March 31, 2023.

"This year is off to an excellent start, with first-quarter revenues and EPS ahead of our expectations, driven by strong commercial execution across all areas of our diversified portfolio," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "These balanced results give us confidence to increase our full-year guidance and we see numerous opportunities for key assets to drive compelling long-term growth."

Note: "Operational" comparisons are presented at constant currency rates that reflect comparative local currency net revenues at the prior year's foreign exchange rates.

**First-Quarter Results**

- Worldwide net revenues were $12.225 billion, a decrease of 9.7 percent on a reported basis, or 8.3 percent on an operational basis.

- Global net revenues from the immunology portfolio were $5.587 billion, a decrease of 9.0 percent on a reported basis, or 7.8 percent on an operational basis.
    - Global Humira net revenues of $3.541 billion decreased 25.2 percent on a reported basis, or 24.3 percent on an operational basis. U.S. Humira net revenues were $2.948 billion, a decrease of 26.1 percent. Internationally, Humira net revenues were $593 million, a decrease of 20.3 percent on a reported basis, or 14.8 percent on an operational basis.
    - Global Skyrizi net revenues were $1.360 billion, an increase of 44.7 percent on a reported basis, or 46.3 percent on an operational basis.
    - Global Rinvoq net revenues were $686 million, an increase of 47.5 percent on a reported basis, or 51.2 percent on an operational basis.

- Global net revenues from the hematological oncology portfolio were $1.416 billion, a decrease of 14.0 percent on a reported basis, or 12.9 percent on an operational basis.
    - Global Imbruvica net revenues were $878 million, a decrease of 25.2 percent, with U.S. net revenues of $638 million and international profit sharing of $240 million.
    - Global Venclexta net revenues were $538 million, an increase of 13.7 percent on a reported basis, or 17.5 percent on an operational basis.

- Global net revenues from the neuroscience portfolio were $1.695 billion, an increase of 13.9 percent on a reported basis, or 15.0 percent on an operational basis.
    - Global Botox Therapeutic net revenues were $719 million, an increase of 17.1 percent on a reported basis, or 18.7 percent on an operational basis.
    - Global Vraylar net revenues were $561 million, an increase of 31.3 percent.
    - Global Ubrelvy net revenues were $152 million, an increase of 10.0 percent.

- Global net revenues from the aesthetics portfolio were $1.300 billion, a decrease of 5.4 percent on a reported basis, or 2.0 percent on an operational basis.
    - Global Botox Cosmetic net revenues were $659 million, an increase of 2.9 percent on a reported basis, or 5.8 percent on an operational basis.
    - Global Juvederm net revenues were $355 million, a decrease of 13.4 percent on a reported basis, or 7.4 percent on an operational basis.

- On a GAAP basis, the gross margin ratio in the first quarter was 67.4 percent. The adjusted gross margin ratio was 84.2 percent.

- On a GAAP basis, selling, general and administrative (SG&A) expense was 24.9 percent of net revenues. The adjusted SG&A expense was 24.4 percent of net revenues.

- On a GAAP basis, research and development (R&D) expense was 18.8 percent of net revenues. The adjusted R&D expense was 13.6 percent of net revenues, reflecting funding actions supporting all stages of our pipeline.

- Acquired IPR&D and milestones expense was 1.2 percent of net revenues.

- On a GAAP basis, the operating margin in the first quarter was 22.6 percent. The adjusted operating margin was 45.0 percent.

- Net interest expense was $454 million.

- On a GAAP basis, the tax rate in the quarter was 49.3 percent. The adjusted tax rate was 13.7 percent.

- Diluted EPS in the first quarter was $0.13 on a GAAP basis. Adjusted diluted EPS, excluding specified items, was $2.46. These results include an unfavorable impact of $0.08 per share related to acquired IPR&D and milestones expense.

Note: "Operational" comparisons are presented at constant currency rates that reflect comparative local currency net revenues at the prior year's foreign exchange rates.

**Recent Events**

- AbbVie announced the European Commission (EC) approved Rinvoq (upadacitinib, 45 mg induction dose, 15 mg and 30 mg maintenance doses) as the first oral Janus Kinase (JAK) inhibitor for the treatment of adult patients with moderately to severely active Crohn's disease (CD) who have had an inadequate response, lost response or were intolerant to either conventional therapy or a biologic agent. The approval is based on results from three studies in which Rinvoq achieved the co-primary endpoints of clinical remission and endoscopic response, compared to placebo, as both induction and maintenance therapy. This is the seventh approved indication for Rinvoq in the European Union (EU).

- AbbVie announced positive top-line results from INSPIRE, a Phase 3 induction study, showing Skyrizi (risankizumab, 1200 mg intravenous (IV), at weeks 0, 4 and 8) met the primary endpoint of clinical remission at week 12, as well as all secondary endpoints in adult patients with moderately to severely active ulcerative colitis (UC). Safety results in this study were consistent with the known safety profile of Skyrizi, with no new safety risks observed. Skyrizi is part of a collaboration between Boehringer Ingelheim and AbbVie, with AbbVie leading development and commercialization globally.

- AbbVie announced positive top-line results from a Phase 2 study of Rinvoq (30 mg, once daily), given alone or as combination therapy (ABBV-599) with a Bruton's Tyrosine Kinase inhibitor (elsubrutinib, 60 mg), in patients with moderately to severely active systemic lupus erythematosus (SLE). The study met the primary endpoint of SLE Responder Index (SRI-4) with a steroid dose of less than or equal to 10 mg per day at week 24 in patients with moderately to severely active SLE. Based on these results, AbbVie intends to advance its clinical program of Rinvoq in SLE to Phase 3.

- At the Congress of European Crohn's and Colitis Organisation (ECCO), AbbVie presented 24 abstracts, including four oral presentations, two digital oral presentations and 18 posters from a broad range of studies across its inflammatory bowel disease (IBD) portfolio. Highlights included data from the ADVANCE, MOTIVATE and FORTIFY studies highlighting efficacy outcomes and clinical response in patients receiving Skyrizi for treatment of moderately to severely active CD, sub-analyses from the U-EXCEL, U-EXCEED and U-ENDURE studies evaluating Rinvoq for the treatment of moderately to severely active CD and analyses evaluating Rinvoq for the treatment of UC.

- At the 2023 American Academy of Dermatology (AAD) Annual Meeting, AbbVie presented more than 20 abstracts showcasing the strength of its dermatology portfolio. Notable presentations included late-breaking data that demonstrated Skyrizi improved plaque psoriasis (PsO) signs and symptoms among moderate to severe PsO patients that previously had a suboptimal response to IL-17 inhibitor therapy; abstracts assessing long-term outcomes of Skyrizi in patients with active psoriatic arthritis (PsA); subgroup analyses of outcomes in adults and adolescents with atopic dermatitis (AD) from three Phase 3 trials assessing the efficacy and safety of Rinvoq across 52 weeks; and results from a Phase 2 study evaluating the efficacy and safety of Rinvoq in moderate-to-severe hidradenitis suppurativa (HS).

- AbbVie announced that it intends to voluntarily withdraw the U.S. accelerated Imbruvica (ibrutinib) approvals for patients with mantle cell lymphoma (MCL) who received at least one prior therapy and patients with marginal zone lymphoma (MZL) who require systemic therapy and received at least one prior anti-CD20-based therapy. This voluntary action was due to requirements related to the accelerated approval status granted by the U.S. Food and Drug Administration (FDA) for MCL and MZL. Other approved indications for Imbruvica in the U.S. were not affected by this withdrawal and Imbruvica's established clinical profile in other approved indications is unchanged. Imbruvica is jointly developed and commercialized with Janssen Biotech, Inc.

**Recent Events (Continued)**

- AbbVie announced that the FDA approved expanding the indication of Qulipta (atogepant) for the preventive treatment of migraine in adults. The approval makes Qulipta the only oral calcitonin gene-related peptide (CGRP) receptor antagonist approved to prevent episodic and chronic migraine. The expanded indication provides an additional treatment option for those with chronic migraine whose frequent disabling attacks negatively impact performance of daily activities. Approval is based on a clinical trial that demonstrated statistically significant reduction from baseline in mean monthly migraine days and improvements in function and reduction in activity impairment.

- AbbVie announced it received a Complete Response Letter (CRL) from the FDA for the New Drug Application (NDA) for ABBV-951 (foscarbidopa/foslevodopa) for the treatment of motor fluctuations in adults with advanced Parkinson's disease (PD). In its letter, the FDA requested additional information about the device (pump) as part of the NDA review. The CRL did not request that AbbVie conduct additional efficacy and safety trials related to the drug. AbbVie plans to resubmit the NDA as soon as possible.

- AbbVie and Capsida Biotherapeutics Inc. (Capsida) announced an expanded strategic collaboration to develop genetic medicines for eye diseases with high unmet need. The collaboration builds on the partnership announced in 2021. Under the expanded collaboration, AbbVie's extensive capabilities will be paired with Capsida's novel adeno-associated virus (AAV) engineering platform and manufacturing capability to identify and advance three programs.

**Full-Year 2023 Outlook**

AbbVie is raising its adjusted diluted EPS guidance for the full year 2023 from $10.62 - $11.02 to $10.72 - $11.12, which includes an unfavorable impact of $0.08 per share related to acquired IPR&D and milestones expense incurred during the first quarter 2023. The company's 2023 adjusted diluted EPS guidance excludes any impact from acquired IPR&D and milestones that may be incurred beyond the first quarter of 2023, as both cannot be reliably forecasted.

**About AbbVie**

AbbVie's mission is to discover and deliver innovative medicines that solve serious health issues today and address the medical challenges of tomorrow. We strive to have a remarkable impact on people's lives across several key therapeutic areas: immunology, oncology, neuroscience, eye care, virology and gastroenterology, in addition to products and services across our Allergan Aesthetics portfolio. For more information about AbbVie, please visit us at www.abbvie.com. Follow @abbvie on Twitter, Facebook or LinkedIn.

**Conference Call**

AbbVie will host an investor conference call today at 8:00 a.m. Central time to discuss our first-quarter performance. The call will be webcast through AbbVie's Investor Relations website at investors.abbvie.com. An archived edition of the call will be available after 11:00 a.m. Central time.

**Non-GAAP Financial Results**

Financial results for 2023 and 2022 are presented on both a reported and a non-GAAP basis. Reported results were prepared in accordance with GAAP and include all revenue and expenses recognized during the period. Non-GAAP results adjust for certain non-cash items and for factors that are unusual or unpredictable, and exclude those costs, expenses, and other specified items presented in the reconciliation tables later in this release. AbbVie's management believes non-GAAP financial measures provide useful information to investors regarding AbbVie's results of operations and assist management, analysts, and investors in evaluating the performance of the business. Non-GAAP financial measures should be considered in addition to, and not as a substitute for, measures of financial performance prepared in accordance with GAAP.

**Forward-Looking Statements**

Some statements in this news release are, or may be considered, forward-looking statements for purposes of the Private Securities Litigation Reform Act of 1995. The words "believe," "expect," "anticipate," "project" and similar expressions and uses of future or conditional verbs, generally identify forward-looking statements. AbbVie cautions that these forward-looking statements are subject to risks and uncertainties that may cause actual results to differ materially from those expressed or implied in the forward-looking statements. Such risks and uncertainties include, but are not limited to challenges to intellectual property, competition from other products, difficulties inherent in the research and development process, adverse litigation or government action, and changes to laws and regulations applicable to our industry. Additional information about the economic, competitive, governmental, technological and other factors that may affect AbbVie's operations is set forth in Item 1A, "Risk Factors," of AbbVie's 2022 Annual Report on Form 10-K, which has been filed with the Securities and Exchange Commission, as updated by its Quarterly Reports on Form 10-Q and in other documents that AbbVie subsequently files with the Securities and Exchange Commission that update, supplement or supersede such information. AbbVie undertakes no obligation, and specifically declines, to release publicly any revisions to forward-looking statements as a result of subsequent events or developments, except as required by law.

**Media:**

Jackie Pacelli

(847) 937-3998

**Investors:**

Liz Shea

(847) 935-2211

Todd Bosse

(847) 936-1182

Jeffrey Byrne

(847) 938-2923

**AbbVie Inc.**
**Key Product Revenues**
**Quarter Ended March 31, 2023**
**(Unaudited)**

| | Net Revenues (in millions) | | | % Change vs. 1Q22 | | | | |
| | | | | Reported | | | Operational[a] | |
| NET REVENUES | U.S. | Int'l. | Total | U.S. | Int'l. | Total | Int'l. | Total |
|---|---|---|---|---|---|---|---|---|
| | **$9,201** | **$3,024** | **$12,225** | **(11.1)%** | **(5.2)%** | **(9.7)%** | **0.9%** | **(8.3)%** |
| **Immunology** | **4,536** | **1,051** | **5,587** | **(10.8)** | **(0.6)** | **(9.0)** | **6.3** | **(7.8)** |
| Humira | 2,948 | 593 | 3,541 | (26.1) | (20.3) | (25.2) | (14.8) | (24.3) |
| Skyrizi | 1,139 | 221 | 1,360 | 45.9 | 38.5 | 44.7 | 47.7 | 46.3 |
| Rinvoq | 449 | 237 | 686 | 44.4 | 53.7 | 47.5 | 64.9 | 51.2 |
| **Hematologic Oncology** | **903** | **513** | **1,416** | **(18.2)** | **(5.5)** | **(14.0)** | **(2.2)** | **(12.9)** |
| Imbruvica[b] | 638 | 240 | 878 | (27.0) | (19.7) | (25.2) | (19.7) | (25.2) |
| Venclexta | 265 | 273 | 538 | 15.7 | 11.8 | 13.7 | 19.2 | 17.5 |
| **Aesthetics** | **777** | **523** | **1,300** | **(8.1)** | **(1.1)** | **(5.4)** | **7.8** | **(2.0)** |
| Botox Cosmetic | 409 | 250 | 659 | (0.7) | 9.4 | 2.9 | 17.5 | 5.8 |
| Juvederm Collection | 122 | 233 | 355 | (17.9) | (10.9) | (13.4) | (1.4) | (7.4) |
| Other Aesthetics | 246 | 40 | 286 | (13.6) | 3.6 | (11.5) | 12.7 | (10.4) |
| **Neuroscience** | **1,463** | **232** | **1,695** | **15.0** | **7.5** | **13.9** | **15.0** | **15.0** |
| Botox Therapeutic | 587 | 132 | 719 | 17.5 | 15.5 | 17.1 | 24.2 | 18.7 |
| Vraylar | 560 | 1 | 561 | 31.2 | n/m | 31.3 | n/m | 31.3 |
| Duodopa | 25 | 93 | 118 | 6.5 | (4.3) | (2.2) | 1.7 | 2.6 |
| Ubrelvy | 150 | 2 | 152 | 9.0 | n/m | 10.0 | n/m | 10.0 |
| Qulipta | 66 | — | 66 | >100.0 | n/m | >100.0 | n/m | >100.0 |
| Other Neuroscience | 75 | 4 | 79 | (56.7) | 6.9 | (55.2) | 12.6 | (55.1) |
| **Eye Care** | **319** | **289** | **608** | **(35.7)** | **5.0** | **(21.2)** | **11.0** | **(19.0)** |
| Ozurdex | 39 | 76 | 115 | 16.1 | 3.2 | 7.3 | 10.3 | 12.2 |
| Lumigan/Ganfort | 63 | 67 | 130 | (6.8) | (7.2) | (7.0) | (2.7) | (4.7) |
| Alphagan/Combigan | 28 | 43 | 71 | (59.4) | 16.9 | (33.3) | 24.2 | (30.8) |
| Restasis | 79 | 13 | 92 | (66.5) | 20.4 | (62.8) | 25.1 | (62.6) |
| Other Eye Care | 110 | 90 | 200 | 22.9 | 10.3 | 16.9 | 16.3 | 19.8 |
| **Other Key Products** | **727** | **201** | **928** | **5.5** | **(7.4)** | **2.4** | **(1.1)** | **3.9** |
| Mavyret | 171 | 193 | 364 | 1.2 | (8.1) | (4.0) | (1.8) | (0.5) |
| Creon | 305 | — | 305 | 6.3 | n/m | 6.3 | n/m | 6.3 |
| Linzess/Constella | 251 | 8 | 259 | 7.7 | 11.9 | 7.8 | 17.8 | 8.0 |

[a] "Operational" comparisons are presented at constant currency rates that reflect comparative local currency net revenues at the prior year's foreign exchange rates.

[b] Reflects profit sharing for Imbruvica international revenues.

n/m = not meaningful

**AbbVie Inc.**
**Consolidated Statements of Earnings**
**(Unaudited)**

| (in millions, except per share data) | First Quarter Ended March 31 | |
|---|---|---|
| | **2023** | **2022** |
| Net revenues | $ 12,225 | $ 13,538 |
| Cost of products sold | 3,986 | 4,052 |
| Selling, general and administrative | 3,039 | 3,127 |
| Research and development | 2,292 | 1,497 |
| Acquired IPR&D and milestones | 150 | 145 |
| Other operating income | (10) | — |
| Total operating costs and expenses | 9,457 | 8,821 |
| | | |
| Operating earnings | 2,768 | 4,717 |
| | | |
| Interest expense, net | 454 | 539 |
| Net foreign exchange loss | 35 | 25 |
| Other expense (income), net | 1,804 | (776) |
| Earnings before income tax expense | 475 | 4,929 |
| Income tax expense | 234 | 436 |
| Net earnings | 241 | 4,493 |
| Net earnings attributable to noncontrolling interest | 2 | 3 |
| Net earnings attributable to AbbVie Inc. | $ 239 | $ 4,490 |
| | | |
| Diluted earnings per share attributable to AbbVie Inc. | $ 0.13 | $ 2.51 |
| | | |
| Adjusted diluted earnings per share[a] | $ 2.46 | $ 3.16 |
| | | |
| Weighted-average diluted shares outstanding | 1,776 | 1,778 |

[a] Refer to the Reconciliation of GAAP Reported to Non-GAAP Adjusted Information for further details.

**AbbVie Inc.**
**Reconciliation of GAAP Reported to Non-GAAP Adjusted Information**
**(Unaudited)**

1. Specified items impacted results as follows:

| (in millions, except per share data) | Quarter Ended March 31, 2023 | | |
|---|---|---|---|
| | Earnings | | Diluted |
| | Pre-tax | After-tax[a] | EPS |
| **As reported (GAAP)** | $ 475 | $ 239 | $ 0.13 |
| Adjusted for specified items: | | | |
| Intangible asset amortization | 1,948 | 1,646 | 0.93 |
| Intangible asset impairment | 710 | 629 | 0.35 |
| Acquisition and integration costs | 61 | 55 | 0.03 |
| Change in fair value of contingent consideration | 1,872 | 1,822 | 1.02 |
| Other | 17 | (6) | — |
| **As adjusted (non-GAAP)** | $ 5,083 | $ 4,385 | $ 2.46 |

[a] Represents net earnings attributable to AbbVie Inc.

Acquisition and integration costs primarily reflect integration costs related to the Allergan acquisition.

Reported GAAP earnings and adjusted non-GAAP earnings for the three months ended March 31, 2023 included acquired IPR&D and milestones expense of $150 million on a pre-tax and after-tax basis, representing an unfavorable impact of $0.08 to both diluted EPS and adjusted diluted EPS.

2. The impact of the specified items by line item was as follows:

| (in millions) | Quarter Ended March 31, 2023 | | | | |
|---|---|---|---|---|---|
| | Cost of products sold | SG&A | R&D | Other operating income | Other expense (income), net |
| **As reported (GAAP)** | $ 3,986 | $ 3,039 | $ 2,292 | $ (10) | $ 1,804 |
| Adjusted for specified items: | | | | | |
| Intangible asset amortization | (1,948) | — | — | — | — |
| Intangible asset impairment | (80) | — | (630) | — | — |
| Acquisition and integration costs | (15) | (44) | (2) | — | — |
| Change in fair value of contingent consideration | — | — | — | — | (1,872) |
| Other | (12) | (11) | (3) | 10 | (1) |
| **As adjusted (non-GAAP)** | $ 1,931 | $ 2,984 | $ 1,657 | $ — | $ (69) |

3. The adjusted tax rate for the first quarter of 2023 was 13.7 percent, as detailed below:

| (dollars in millions) | Quarter Ended March 31, 2023 | | |
|---|---|---|---|
| | Pre-tax earnings | Income taxes | Tax rate |
| **As reported (GAAP)** | $ 475 | $ 234 | 49.3 % |
| Specified items | 4,608 | 462 | 10.0 % |
| **As adjusted (non-GAAP)** | $ 5,083 | $ 696 | 13.7 % |

## AbbVie Inc.
## Reconciliation of GAAP Reported to Non-GAAP Adjusted Information
## (Unaudited)

1.  Specified items impacted results as follows:

| (in millions, except per share data) | Quarter Ended March 31, 2022 | | |
|---|---|---|---|
| | Earnings | | Diluted |
| | Pre-tax | After-tax[a] | EPS |
| **As reported (GAAP)** | $ 4,929 | $ 4,490 | $ 2.51 |
| Adjusted for specified items: | | | |
| Intangible asset amortization | 1,855 | 1,565 | 0.88 |
| Acquisition and integration costs | 138 | 121 | 0.07 |
| Change in fair value of contingent consideration | (748) | (746) | (0.42) |
| Litigation matters | 184 | 148 | 0.08 |
| Other | 64 | 63 | 0.04 |
| **As adjusted (non-GAAP)** | $ 6,422 | $ 5,641 | $ 3.16 |

[a]  Represents net earnings attributable to AbbVie Inc.

Acquisition and integration costs reflect integration costs related to the Allergan acquisition. Other primarily includes restructuring charges associated with streamlining global operations.

Reported GAAP earnings and adjusted non-GAAP earnings for the first quarter of 2022 included acquired IPR&D and milestones expense of $145 million on a pre-tax and after-tax basis, representing an unfavorable impact of $0.08 to both diluted EPS and adjusted diluted EPS.

2.  The impact of the specified items by line item was as follows:

| (in millions) | Quarter Ended March 31, 2022 | | | |
|---|---|---|---|---|
| | Cost of products sold | SG&A | R&D | Other expense (income), net |
| **As reported (GAAP)** | $ 4,052 | $ 3,127 | $ 1,497 | $ (776) |
| Adjusted for specified items: | | | | |
| Intangible asset amortization | (1,855) | — | — | — |
| Acquisition and integration costs | (34) | (93) | (11) | — |
| Change in fair value of contingent consideration | — | — | — | 748 |
| Litigation matters | — | (184) | — | — |
| Other | (60) | 2 | (6) | — |
| **As adjusted (non-GAAP)** | $ 2,103 | $ 2,852 | $ 1,480 | $ (28) |

3.  The adjusted tax rate for the first quarter of 2022 was 12.1 percent, as detailed below:

| (dollars in millions) | Quarter Ended March 31, 2022 | | |
|---|---|---|---|
| | Pre-tax earnings | Income taxes | Tax rate |
| **As reported (GAAP)** | $ 4,929 | $ 436 | 8.8 % |
| Specified items | 1,493 | 342 | 22.9 % |
| **As adjusted (non-GAAP)** | $ 6,422 | $ 778 | 12.1 % |

# FILED UNDER SEAL

# Exhibit 10

# FILED UNDER SEAL

# Exhibit 11

# FILED UNDER SEAL

# Exhibit 12

# FILED UNDER SEAL

# Exhibit 13

# FILED UNDER SEAL

# Exhibit 14

# FILED UNDER SEAL

# Exhibit 15

# Exhibit 16



abbvie

Our Company     Our Science     Societal Impact     Careers     Partnerships

Patients  /  Patient Assistance  /  Find my medicine  /  HUMIRA® (adalimumab)

Patient Assistance

# HUMIRA® (adalimumab)

Start here to learn more about myAbbVie Assist eligibility criteria.

## What best describes your health insurance coverage?

- I have employer-provided insurance or have purchased private insurance.

- I am uninsured or my health insurance isn't enough to cover the cost of my medicine.

- I am receiving coverage through Medicare

AbbVie00023151

abbvie      Our Company      Our Science      Societal Impact      Careers      Partnerships

# Patient Assistance options



You may be eligible to receive free HUMIRA if you:

- Have been prescribed HUMIRA
- Have limited or no health insurance coverage
- Live in the United States
- Are being treated by a licensed U.S. health care provider on an outpatient basis
- Patients with commercial insurance plans requiring them to apply to myAbbVie Assist as a condition of, requirement for, or prerequisite to coverage of relevant AbbVie products commonly known as alternate funding programs, are not eligible for myAbbVie Assist.

If you have insurance, we will review your qualifying financial need based on a combination of your insurance coverage, household income, and out-of-pocket medical expenses during the application process. To help you understand the income guidelines that we use to evaluate qualifying financial need, we've provided the table below:

AbbVie00023152

Global • EN

Investors    News Center    Patient Assistance

abbvie

Our Company     Our Science     Societal Impact     Careers     Partnerships

| Household size | Annual income |
|---|---|
| 1 | $81,540 or less |
| 2 | $109,860 or less |
| 3 | $138,180 or less |
| 4 | $166,500 or less |
| After 4, add $28,320 for each additional dependent family member | |

If you would like to submit your application electronically, click below to apply online. We recommend the online application if you are at least 18 years old and have electronic copies of documents like tax returns or insurance cards.

Apply online CTA

Already registered? Sign in.

AbbVie00023153

abbvie

Our Company     Our Science     Societal Impact     Careers     Partnerships

If the online application is not right for you and you would prefer to apply by fax or mail, please download the application below.

HUMIRA application (English)
HUMIRA application (English - Large Font)
HUMIRA application (Spanish)

Medicare patients may qualify for Extra Help from Medicare.

AbbVie00023154

Investors    News Center    Patient Assistance

abbvie

Our Company    Our Science    Societal Impact    Careers    Partnerships

## Savings card

**Program eligibility details**

If you have employer-provided insurance coverage or have purchased private insurance on your own, you may qualify for assistance with your out-of-pocket expenses. Visit HUMIRA.com.

Available to patients with commercial prescription insurance coverage who meet eligibility criteria. Copay assistance program is not available to patients receiving prescription reimbursement under any federal, state, or government-funded insurance programs (for example, Medicare [including Part D], Medicare Advantage, Medigap, Medicaid, TRICARE, Department of Defense, or Veterans Affairs programs) or where prohibited by law. Offer subject to change or discontinuance without notice. Restrictions, including monthly maximums, may apply. This is not health insurance.

AbbVie00023155

# Exhibit 17

# July 2022 Washington Post Article on AbbVie's Tax Practices

## The Washington Post

*Democracy Dies in Darkness*

**ECONOMIC POLICY**

# Drugmaker AbbVie shielded profits from U.S. taxes, Senate report says

The new report from Democrats on the Senate Finance Committee comes as lawmakers struggle to advance a broader economic package that could retool international tax laws

 By <u>Tony Romm</u>

July 7, 2022 at 5:00 a.m. EDT

President Donald Trump's signature tax overhaul nearly five years ago allegedly opened the door for the pharmaceutical giant AbbVie to shield much of its U.S. sales from federal taxes, according to Senate Democratic investigators, who said their new findings reflect a "clear need to reform" the system.

The <u>report</u> Thursday from the Senate Finance Committee comes as Democrats continue to wrangle over a broader rethink of the laws governing the taxes companies pay on income generated in the United States and abroad. Party lawmakers and top Biden administration officials hope to overhaul the tax code as part of their long-stalled package of economic initiatives, but they have failed to sell their global proposals to Sen. Joe Manchin III (D-W.Va.), a centrist holdout.

"It's critical that Congress takes steps to fix this broken system, so nurses and firefighters aren't paying higher tax rates than Big Pharma," Sen. Ron Wyden (D-Ore.), the chairman of the panel, said in a statement.

Spokespeople for AbbVie did not immediately respond to a request for comment.

In investigating AbbVie, the maker of the popular arthritis drug Humira, the Democrats on the Senate's top tax-focused committee found that the drug company in 2020 generated 75 percent of its sales in the United States — but only reported 1 percent of that income for U.S. tax purposes. According to the report, AbbVie was able to shrink its tax burden as a result of Trump's 2017 law, which changed how companies calculate their tax bills on profits generated internationally.

Essentially, the law set up a minimum 10.5 percent tax on income derived from patents, trademarks and other assets abroad. The move was meant to ensure that other changes to the tax code did not spark a wave of offshoring, with companies shifting their operations from the U.S. to low-tax havens overseas.

But Democrats long have contended that many multinational corporations quickly found novel ways to exploit that system anyway. Some of the world's most profitable firms spread out their assets in ways that allowed them to pay far less than they should have.

AbbVie benefited because it had based its patents, trademarks and other assets for the sale of Humira with subsidiaries in Bermuda, while manufacturing key parts of the drug via a branch in Puerto Rico, the Senate Democrats' investigation found. These and other tactics helped AbbVie sharply reduce the taxes it owed, lowering its effective U.S. rate in 2018 to about 8.7 percent from 19 percent a year earlier, the data show. For 2021, AbbVie expected to pay an estimated effective tax rate of about 12.5 percent, it said earlier this year.

The report also cites AbbVie's chief executive, Richard A. Gonzalez, who told investors in 2018 that the GOP tax law would lower the company's effective rate to closer to 9 percent — far less than the 21 percent corporate rate enacted in 2017.

In issuing the findings, top Senate Democrats sought to lay the groundwork for an even deeper investigation targeting the pharmaceutical industry and its sky-high profits. Wyden has demanded similar documents from two other drugmakers, Merck and Abbott. His panel's report faulted both companies for having "refused to substantively cooperate."

Earlier this year, Wyden also took aim at Abbott over its role in the national baby formula shortage. The closure of one of its key plants left Wyden concerned that the firm's tax practices and stock buybacks — meant to maximize profits and investment returns to shareholders — had come at the expense of infant safety. Abbott denied that, stressing in a statement at the time that it is a "responsible and transparent taxpayer" while adding that stock buybacks "are not impacting our ability to invest in or reopen."

In the meantime, Democrats have pursued significant changes to the ways that pharmaceutical giants price their drugs and pay taxes.

To lower costs for seniors, party lawmakers proposed granting the government new powers to negotiate some drug prices on behalf of Medicare beneficiaries. On Wednesday, Democrats took the next procedural step to advance the plan, the details of which were first reported by The Washington Post last week. Party lawmakers hope to adopt it as part of a larger spending package in the Senate using a process known as budget reconciliation. The tactic will allow Democrats to bypass a Republican filibuster even in the narrowly divided Senate.

Manchin has supported efforts to lower drug prices. But he has yet to reach agreement with others in his party on the rest of the package, a successor to the ill-fated Build Back Better Act, which passed the House but foundered in the Senate last year. The West Virginia moderate opposed Democrats' prior bill, a sprawling $2 trillion measure, arguing it could add to the deficit and worsen inflation. GOP lawmakers, in contrast, long have opposed empowering Medicare to negotiate costs.

The Biden administration has forged ahead in trying to strike an agreement on a global minimum tax that would discourage companies from taking advantage of low-tax havens. Its fate rests in part on the Senate, which would have to change existing laws to bring the country in line with the rest of the world.

But that proposal also faltered last year, another casualty of Manchin's resistance to adopting the Build Back Better Act. Republicans, meanwhile, sought to protect their 2017 tax law at all costs, arguing the sum total of changes rejuvenated the U.S. economy.

In recent weeks, Manchin privately has expressed resistance to the Biden administration's approach, according to two people familiar with the matter, who spoke on the condition of anonymity to discuss the delicate talks. While the moderate has discussed alternatives with Senate Majority Leader Charles E. Schumer (D-N.Y.), the two people familiar with the deliberations raised fears that the international tax provisions could fall out of the package entirely.

Aides to Wyden, who helped draft the plan, stressed in their report Thursday that their findings with AbbVie illustrated the consequences of inaction. "It is imperative that Congress enact needed international tax reforms that would close loopholes that allow drug companies like AbbVie to stash their profits in tax havens," they wrote.

# March 2022 Texas AG Press Release on AbbVie's Violations of State Law



(/)

**March 24, 2022 | Press Release |** <u>**Child Abuse (/news/categories/child-abuse)**</u>

# AG Paxton Investigates Potential Violations of State Law by Puberty-Blocking Drug Manufacturers

Texas Attorney General Ken Paxton has issued Civil Investigative Demands (CIDs) to AbbVie Inc. and Endo Pharmaceuticals, Inc. as part of an investigation to determine whether these manufacturers of puberty-blocking drugs deceptively advertised and promoted hormone blockers for unapproved uses without disclosing the potential risks to children and their parents. The CIDs follow an internal investigation opened in this matter in mid-December 2021, and last month's release of a related formal Texas Attorney General Opinion.

"Companies should never promote or supply puberty blockers for uses that are not intended or approved," Attorney General Paxton said. "I will not allow Big Pharma to misleadingly promote these drugs that may pose a high risk of serious physical and psychological damage to Texas children who cannot yet fathom or consent to the potential long-term effects of such use."

The medications at issue, Supprelin LA and Lupron Depot, are FDA-approved to treat children with Central Precocious Puberty, in which puberty commences prematurely. Vantas, along with other forms of Lupron, has been prescribed for palliative treatment of prostate cancer. But these drugs are now being used to treat gender dysphoria even though they are not approved for such use by the Food and Drug Administration. Gender dysphoria is a diagnosed mental disorder in which a person experiences significant distress related to a strong desire to be of another biological sex.

To read the CIDs sent to Abbvie click here. (https://www.texasattorneygeneral.gov/sites/default/files/images/executive-management/CID_Abbvie.pdf)

To read the CIDs sent to Endo click here. (https://www.texasattorneygeneral.gov/sites/default/files/images/executive-management/CID_Endo.pdf)

Back to Top

# August 2020 CA Dep't of Insurance Press Release on Fraud Lawsuit against AbbVie

 **Maintenance Notice**

# California Department of Insurance fraud lawsuit results in reforms of HUMIRA marketing and $24 million payment by drugmaker AbbVie

News: 2020 Press Release

For Release: August 6, 2020
Media Calls Only: 916-492-3566
Email Inquiries: cdipress@insurance.ca.gov

**California Department of Insurance fraud lawsuit results in reforms of HUMIRA marketing and $24 million payment by drugmaker AbbVie**

Department lawsuit had alleged insurance fraud by AbbVie in promoting its blockbuster prescription drug HUMIRA

**OAKLAND, Calif.** — Insurance Commissioner Ricardo Lara today announced a settlement agreement with AbbVie Inc. to resolve a lawsuit alleging violations of the California Insurance Frauds Prevention Act (Act) involving the marketing of blockbuster prescription drug HUMIRA. AbbVie agreed to reform its HUMIRA marketing practices in California, including disclosing that registered nurses employed as "Ambassadors" to interact with patients about HUMIRA are actually paid by the company, not a medical provider, and reforming how HUMIRA is marketed to health care providers. In addition, as provided for in the Act, AbbVie has also paid a combined $24 million to the State of California and the whistleblower who brought the case to the Department's attention.

"AbbVie's prior practices in marketing HUMIRA egregiously put profits ahead of transparency in patient care and violated California law," said Commissioner Lara. "This settlement delivers important reforms to AbbVie's business practices and a substantial monetary recovery that will be used to continue to combat insurance fraud."

In October 2016, the Department began an investigation into AbbVie after recieving a whistleblower case filed by a registered nurse who was employed as an AbbVie Ambassador in Florida. After its investigation, the Department intervened in that case and filed a Superseding Complaint alleging that whistleblower violated California's Insurance Frauds Prevention Act. Among other things, the Department alleged that AbbVie violated the Act by unlawfully providing free and valuable professional goods and services to physicians to induce and reward AbbVie prescriptions. The Department alleged that Nurse Ambassadors interfered with the flow of doctor-patient communications and did not directly answer questions pertaining to AbbVie marketing activities constituted kickbacks in violation of the Act, including, for example, the provision of meals and drinks to providers outside the context of speakers programs.

While AbbVie continues to deny the allegations, as a part of the settlement, AbbVie agreed to reforms, including:

- Ambassadors will disclose to patients that they are provided by AbbVie and do not work under the direction of the patient's health care provider.
- The company will implement a policy modification prohibiting HUMIRA sales representatives from inviting HUMIRA prescribing health care providers to offsite business meals, except as part of the AbbVie speaker programs.
- AbbVie will provide patients with the U.S. FDA-approved HUMIRA medication guide and Ambassadors will direct patients to the medication guide and their health care provider regarding side effects and safety risk.
- The company will provide guidance and training that Ambassadors shall not have patient-specific discussions with providers who prescribe AbbVie.

- ❯ AbbVie employees will be prohibited from describing Ambassadors to health care providers as "extensions of their offices" and from providing to providers any contact information for Ambassadors who interact with HUMIRA patients.
- ❯ AbbVie employees and Ambassadors will not actively participate in conversations between patients and insurance companies.

The complete list of AbbVie's business practice reforms can be found in the settlement.

### # # #

**Media Notes:**

- ❯ The settlement agreement can be found here.
- ❯ Insurance Frauds Preventions Act Allocation Agreement can be found here.
- ❯ This lawsuit and resolution applies to the case filed in Alameda Superior Court (Case No. RG18893169) which alleges violations of the Insurance Frauds Prevention Act. There is a seperate case pending (*Suarez et al v. AbbVie Inc*) in the Northern District of Illinois that alleges violations of the Federal False Claims Act and various state false claims acts. The Commissioner is not a party to that litigation.
- ❯ The non-monetary terms discussed in this release only apply in California.

---

Led by Insurance Commissioner Ricardo Lara, the California Department of Insurance is the consumer protection agency for the nation's largest insurance marketplace and safeguards all of the state's consumers by fairly regulating the insurance industry. Under the Commissioner's direction, the Department uses its authority to protect Californians from insurance rates that are excessive, inadequate, or unfairly discriminatory, oversee insurer solvency to pay claims, set standards for agents and broker licensing, perform market conduct reviews of insurance companies, resolve consumer complaints, and investigate and prosecute insurance fraud. Consumers are urged to call 1-800-927-4357 with any questions or contact us at www.insurance.ca.gov via webform or online chat. Non-media inquiries should be directed to the Consumer Hotline at 800-927-4357. Teletypewriter (TTY), please dial 800-482-4833.



---

Copyright © California Department of Insurance

# FILED UNDER SEAL

# Exhibit 18

# FILED UNDER SEAL

# Exhibit 19

# FILED UNDER SEAL

# Exhibit 20

# FILED UNDER SEAL

# Exhibit 21

# FILED UNDER SEAL

# Exhibit 22

# FILED UNDER SEAL

# Exhibit 23

# FILED UNDER SEAL

# Exhibit 24

# FILED UNDER SEAL

# Exhibit 25

# FILED UNDER SEAL

# Exhibit 26

# FILED UNDER SEAL

# Exhibit 27

# FILED UNDER SEAL

# Exhibit 28

# FILED UNDER SEAL

# Exhibit 29

# Exhibit 30

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
202.747.1900 main
202.747.1901 fax
www.sheppardmullin.com

Erica J. Kraus
202.747.2645 direct
ekraus@sheppardmullin.com

March 28, 2023

**VIA FEDERAL EXPRESS
AND EMAIL DELIVERY TO: perry.siatis@abbvie.com**

Perry C. Siatis
AbbVie Inc.
1 N. Waukegan Road
North Chicago, IL 60064-1802

Re:     Alternate Funding Program References

Dear Mr. Siatis:

We represent Payer Matrix, an advocacy company that connects patients with resources to cover the costs of care not covered under their health benefit plans. We have recently become aware of references both to Payer Matrix specifically and to "alternate funding programs" more generally that do not accurately represent the way that Payer Matrix operates. We are concerned that these references reflect a misunderstanding by AbbVie about our company, and result in confusion of and potentially financial harm to the patients we serve.

More specifically:

- We have reviewed an AbbVie patient assistance program application form that describes alternate funding programs, explicitly including Payer Matrix, as "requiring [patients] to apply to a manufacturer's patient assistance program or otherwise pursue specialty drug prescription coverage through an alternate funding vendor as a condition of, requirement for, or prerequisite to coverage of relevant AbbVie products, or that otherwise denies, restricts, eliminates, delays, alters, or withholds any insurance benefits or coverage contingent upon application to, or denial of eligibility for, specialty drug prescription coverage…" This description is inaccurate, at least with respect to Payer Matrix's operations. Payer Matrix works with patients whose self-funded health benefit plans do not offer coverage for the specialty drugs they have been prescribed, or which require their enrollees to pay a 100% copayment obligation for such drugs. Payer Matrix's advocacy service, therefore, is not a prerequisite for coverage, nor is coverage being restricted contingent on engaging with Payer Matrix. Rather, these plans have elected not to provide coverage for the costs of certain specialty drugs. Payer Matrix's advocacy service allows patients who have been prescribed these drugs, but who do not have coverage through their self-funded benefit plans, to identify and apply for alternate sources of funding.

# SheppardMullin

Perry C. Siatis
March 28, 2023
Page 2

- We have also reviewed a denial letter from AbbVie's patient assistance program to a patient who worked with Payer Matrix. This letter stated that AbbVie "believe[s] [the patient's] insurance provider is, or is partnering with a third- party company to, inappropriately utilize [AbbVie's] program instead of [the patient's] insurance coverage, commonly known as alternate funding programs." Again, this statement is inaccurate. Self-funded health benefit plans, like this patient's benefits provider, may contract with Payer Matrix to assist patients in identifying alternate funding for specialty drugs *that the plan does not cover*. Neither the patient's benefit provider nor Payer Matrix seeks to use AbbVie's patient assistance program *instead* of the patient's benefits coverage. Rather, Payer Matrix navigates patients to alternative funding sources whose benefit coverage does not extend to the specialty drugs at issue. There is nothing inappropriate about the patient's benefit provider's efforts to support its enrollees in accessing financial support for drugs that enrollees are prescribed, but which are outside the scope of their benefit coverage.

- We understand that AbbVie representatives are making similar oral representations to patients applying for its patient assistance program, including that Payer Matrix's advocacy service is inappropriate or fraudulent. There is no basis for these statements. As explained above, Payer Matrix is contracted with certain self-funded health benefit plans to assist enrollees of these plans who have been prescribed specialty drugs that *the plans do not cover*, in accessing alternate funding to cover the cost of the drugs. There is nothing inappropriate or fraudulent about these efforts, and Payer Matrix has always been transparent in its interactions with patients, benefit providers, and patient assistance providers about its function and its role in supporting patients in identifying and applying for available alternate funding.

We hope that the above discussion clarifies the nature of Payer Matrix's operations, and confirms that there is nothing inappropriate about the support Payer Matrix offers to patients in accessing alternate funding for specialty drugs for which their benefit providers do not pay. Based on these clarifications, and in furtherance of our shared mission to protect patient access to their prescribed specialty drugs, we ask that you revise the above-cited and any similar materials, and instruct your representatives about the above clarifications, to avoid any further misunderstanding or confusion for patients. Further, we ask that you do not deny assistance to otherwise eligible patients who have been prescribed drugs that their benefit plans do not cover and which they cannot afford. Please do not hesitate to contact us if you have questions or would benefit from additional education about Payer Matrix's programs.

Sincerely,

DocuSigned by:

*Erica kraus*

EC10AF8A00C4409...

Erica J. Kraus
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:4893-9526-5882.1

cc:   Edward Scheidler

# FILED UNDER SEAL

# Exhibit 31

# Exhibit 32

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AbbVie Inc., | |
| *Plaintiff*, | Civil Action No. 1:23-cv-02836 |
| v. | Hon. Jorge L. Alonso |
| Payer Matrix, LLC | Hon. Magistrate Judge Young B. Kim |
| *Defendant*. | |

**ORDER GRANTING**
**ABBVIE INC.'S MOTION FOR PRELIMINARY INJUNCTION**
**AS TO PAYER MATRIX, LLC**

JORGE L. ALONSO, U.S. District Court Judge:

This matter having come before the Court on Plaintiff AbbVie Inc.'s ("AbbVie") Motion for Preliminary Injunction and after considering the accompanying Memorandum of Law in Support of AbbVie's Motion for Preliminary Injunction, the Amended Declaration of Anne Najjar with Exhibits 1-18, the Amended Declaration of Valarie Hays with Exhibits 1-33, 35-42, 44-46, 51-58, 60-63, & 65-71, the Amended Declaration of Dr. Philip L. Cohen with Exhibits 1-4, the Amended Declaration of Heather Bates with Exhibits 1-8, the Declaration of Dr. Michael Pick, and the Declaration of Craig Garthwaite, PhD.:

It is hereby ORDERED that:

Pursuant to Federal Rule of Civil Procedure 65, AbbVie's Motion for Preliminary Injunction is GRANTED. Defendant Payer Matrix, LLC ("Payer Matrix") is ordered to comply as follows, effective immediately:

(1)     Payer Matrix is prohibited from including AbbVie's name, logo, or any products AbbVie manufactures in Payer Matrix's marketing materials, its specialty drug list, or on its website;

(2)     Payer Matrix is prohibited from advertising or representing to third parties that it partners with, works with, or has any sort of business relationship with AbbVie (or had any such relationship with AbbVie in the past);

(3)     Payer Matrix is prohibited from accepting "cost avoidance fees" or any other form of remuneration for any services related to AbbVie's patient assistance program ("PAP") since Payer Matrix's clients' members are ineligible for the program;

(4)     Payer Matrix is prohibited from submitting applications or application-supporting materials to AbbVie's PAP, either directly or indirectly through third parties;

(5)     Payer Matrix is prohibited from directing or advising its clients' members, either directly or through its clients, on how to apply to AbbVie's PAP;

(6)     Payer Matrix is prohibited from asking or directing health care providers ("HCPs") to submit PAP applications to AbbVie on behalf of Payer Matrix's clients' members or prospective clients' members, since these members are ineligible for the program;

(7)     Payer Matrix is prohibited from making false statements to HCPs, patients, employers, plan sponsors, or other third parties about AbbVie's PAP and co-pay assistance program ("CAP") coverage, including that AbbVie no longer has a PAP or a CAP, that it no longer allows "third party" involvement in the PAP, or that the January 2023 updates to its PAP eligibility

2

requirements restricted its PAP coverage in any way other than to prohibit the involvement of alternate funding vendors, like Payer Matrix;

(8)     Payer Matrix is prohibited from making false or misleading representations to HCPs, patients, employers, plan sponsors, or other third parties about how non-AbbVie drugs compare to AbbVie drugs;

(9)     Payer Matrix is prohibited from soliciting HCPs and encouraging them to switch its clients' members' prescription from an AbbVie drug to a non-AbbVie drug without first disclosing to both the HCPs and their respective patients that Payer Matrix may receive compensation when the patient is switched from an AbbVie drug to a different drug with an available PAP or CAP; and

(10)    Payer Matrix is prohibited from soliciting HCPs and encouraging them to switch its clients' members' prescriptions from an AbbVie drug to a non-AbbVie drug based on the representation that the members' currently prescribed AbbVie drug has been "excluded" from plan coverage without also fully disclosing to both the HCPs and the members that Payer Matrix's program includes an "override" process for its clients, meaning their plan design allows Payer Matrix and its partner Pharmacy Benefit Managers to "override" the specialty drug "exclusion" and have the plan cover payment of the members' specialty drugs, including for patients who refuse to participate in Payer Matrix's program and for patients whose HCPs decline to switch their medication to a non-AbbVie drug.

_____
Jorge L. Alonso
United States District Court Judge

Dated:

3