<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
     ABBVIE, INC.,                    )
 4                                    )
                   Plaintiff,         )
 5                                    )  No. 23 C 2836
               vs.                    )  Chicago, Illinois
 6                                    )  December 18, 2024
     PAYER MATRIX, LLC,               )  9:30 a.m.
 7                                    )
                   Defendant.         )
 8

 9                   TRANSCRIPT OF PROCEEDINGS

10         BEFORE THE HONORABLE GEORGIA N. ALEXAKIS

11   APPEARANCES:

12   For the Plaintiff:    ARNOLD & PORTER
                           70 West Madison Street
13                         Suite 4200
                           Chicago, Illinois 60602
14                         BY:  MS. VALARIE HAYS
                           MR. DANIEL E. RAYMOND
15

16   For the Defendant:    SHEPPARD MULLIN RICHTER & HAMPTON LLP
     (Via teleconference)  321 North Clark Street
17                         32nd Floor
                           Chicago, Illinois 60654
18                         BY:  MR. DAVID M. POELL

19   For Amicus Aimed      EIMER STAHL LLP
     Alliance:             224 South Michigan Avenue
20                         Suite 1100
                           Chicago, Illinois 60604
21                         BY:  MR. DANIEL D. BIRK

22

23   Official Court Reporter:   JENNIFER COSTALES, CRR, RMR, CRC
                                219 S. Dearborn St., Room 1928
24                              Chicago, Illinois 60604
                                (312) 435-5895
25                              jenny.uscra@yahoo.com
</pre>

1          (Proceedings in open court)

2               THE COURTROOM DEPUTY:  Case 23 CV 2836, AbbVie versus

3    Payer Matrix.

4               MS. HAYS:  Good morning, Your Honor.  Valarie Hays

5    and Dan Raymond on behalf of AbbVie.

6               THE COURT:  Good morning.

7               And do we have --

8               MR. POELL:  Good morning.

9               THE COURT:  Go ahead.

10              MR. POELL:  My apologies, Your Honor.  Yes, David

11   Poell, P-O-E-L-L, dialing in on behalf of defendant Payer

12   Matrix, LLC.

13              THE COURT:  Good morning.

14              And I think we may have someone here for *amicus*.

15              MR. BIRK:  Yes.  Good morning, Your Honor.  Dan Birk

16   from Eimer Stahl on behalf of *amici* Aimed Alliance and

17   associated groups.

18              THE COURT:  Good morning.

19              So here is my agenda for today's hearing.  We have a

20   few pending motions:  A motion to seal from Payer Matrix that

21   accompanied their filings in opposition to AbbVie's motion for

22   preliminary injunction, there is the pending motion to unseal

23   the first amended complaint, and then there is the motion by

24   *amici* to file their brief.

25              So I want to address those three motions, and then I

1    want to talk about whether a reply would be beneficial to the

2    Court in advance of the preliminary injunction hearing.  I'd

3    like to discuss some logistics related to the preliminary

4    injunction hearing.  And then the last thing on my agenda was

5    to discuss the schedule on the anticipated motion to dismiss.

6    And then I'll say that the last item on the agenda is whatever

7    else anybody else wants to talk about.  But that's my plan.

8           I will start with the motion to seal.  That's at

9    docket 278.  I will grant that motion.  It strikes me as a

10    very uncontroversial motion seeking relief that's reciprocal

11    to similar relief that I granted to AbbVie in conjunction with

12    its filing of its motion, of its most recent motion for a

13    preliminary injunction.  So that motion is granted.

14           With respect to the motion to unseal the first

15    amended complaint, and that to be clear is a motion to unseal

16    the first amended complaint in its entirety, I'm going to deny

17    that motion.

18           I think it's important to stress that the vast

19    majority of the lengthy complaint is already accessible to the

20    public.  So I don't believe that accessibility to these

21    proceedings by the public is compromised by the redactions.

22    One can read the complaint and readily understand the nature

23    of the plaintiff's allegations against the defendant.

24           Indeed, in several instances the redacted information

25    simply gives some additional detail or flavor to an allegation

1    that is entirely public.  There are cases where a subheading,

2    for example, is unredacted, but a particular portion of the

3    allegation that follows is redacted in part.  There are cases

4    where AbbVie illustrates its point with an unredacted

5    allegation, but then there is a second illustrative example

6    that is redacted.

7         In other words, in my view many of the redactions

8    appear to be redacting redundant information.  So I don't read

9    the redacted version of the complaint as compromising the

10   accessibility of the proceedings.

11        Of course, the fact that at least some of the

12   redactions appear to be only redacting redundant information

13   leads to this question of, you know, why is Payer Matrix

14   seeking to keep that information, that information, but not

15   related information, under seal?

16        One way to get to the bottom of that question would

17   be for the Court and the parties to engage in a

18   redaction-by-redaction inquiry.  I'm not going to do that.  I

19   don't think that's an effective use of my time or the parties'

20   time, especially where again the accessibility of the public

21   to these proceedings is not compromised by the redacted

22   version of the complaint.

23        I also think that the defendant has at this time

24   asserted a sufficient basis for keeping the redacted material

25   out of the public's view.  Some of its asserted interests are

1    business related, i.e., strategies and operational advantages.

2    Some of its asserted interests appear to implicate

3    confidential information that belongs not to defendant but to

4    third parties.  Some of the asserted interests deal with

5    patient confidentiality.

6         On that last point, I don't doubt that AbbVie has

7    made a good faith effort to anonymize allegations so that the

8    privacy interests would not be harmed by public disclosure.

9    The problem, however, is that my education about this matter

10   remains ongoing.  And so what might look sufficiently

11   anonymized to me at this juncture may not actually be

12   sufficiently anonymized upon my further education.

13        And I feel the same about the asserted business

14   interests.  Something that at this point might not look like a

15   trade secret to me might, in fact, be so.

16        So at this juncture and, again, underscoring the fact

17   that the complaint is still readily comprehensible by members

18   of the public, I think the more prudent course of action is to

19   keep the full unredacted version of the first amended

20   complaint under seal.

21        I want to emphasize that this is a ruling only at

22   this juncture.  This isn't a ruling that the redacted material

23   will remain under seal for purposes of the preliminary

24   injunction hearing or for purposes of any ruling, written

25   ruling that I may issue resolving the plaintiff's motion for a

1    preliminary injunction.  So I really do want to stress that.

2         If there is a specific piece of redacted information

3    that Payer Matrix truly, truly believes needs to remain under

4    seal during the course of a public preliminary injunction

5    hearing or in a publicly filed court ruling, the onus is on

6    Payer Matrix to speak up at the appropriate juncture during

7    the hearing.  I will consider arguments then.

8         And I expect the arguments to be incredibly tailored

9    to the specific redaction or potential redaction or sealing

10   issue that arises at that juncture.  Otherwise if it comes out

11   at the hearing, I'm going to consider it public, and I'm going

12   to consider it fair game for the Court to rely on in a fully

13   published opinion.

14        I don't think my ruling contravenes Seventh Circuit

15   case law on the subject of sealed materials.  I've reviewed

16   the cases that the parties have cited and other pertinent case

17   law, and I don't read that case law as requiring that a

18   complaint be publicly filed in its entirety from the get-go in

19   a proceeding simply because a complaint by its very nature

20   will have some influence on judicial decision-making.

21        And I rely in particular on *City of Greenville*, a

22   Seventh Circuit case from 2014, where the Court wrote that

23   "The presumption of public access turns on what the Judge did,

24   not on what the parties filed."  And then it continues, *City*

25   *of Greenville* continues, citing to *Baxter International*, a

1  2002 Seventh Circuit case, and it reads, "Public access

2  depends on whether a document influenced or underpinned the

3  judicial decision.  The fact of filing may support an

4  inference of influence.  It suggests at least that the

5  document was at the Judge's fingertips, but not always, or

6  *Seattle Times's* protection of discovery materials would be

7  toothless."

8          I do recognize that the presumption of public access

9  would kick in later in the proceedings, and particularly on

10  appeal, and that's why again I underscore the point that this

11  is a ruling at this juncture, not a ruling in perpetuity that

12  the first amended complaint would, the full unredacted version

13  of the first amended complaint would remain under seal forever

14  and ever and ever.

15          AbbVie, of course, is free to renew its motion after

16  my ruling on the preliminary injunction if it becomes apparent

17  then that I relied on particular allegations, by that point

18  established facts and ruling on the preliminary injunction

19  motion.

20          I say that knowing that a renewed motion might not be

21  necessary if the specific allegation is actually reflected in

22  the written opinion.  But that's up to AbbVie if they want to

23  renew their motion to unseal the first amended complaint.

24          So that's my ruling on the motion to unseal the first

25  amended complaint.

1          On the motion by Aimed Alliance to file its brief,

2     I'm going to grant that motion and deny it in part.  And I'll

3     explain my reasoning.  The part that I'm granting is actually

4     quite narrow.  Well, in all fairness, I'm mostly denying the

5     motion.

6          Here is what I will say on that point.  This is a

7     decision that the Seventh Circuit leaves in my discretion.  I

8     grant the motion to the extent that Aimed Alliance requests

9     that the Court modify a proposed injunction to require notice

10    to impacted customers.  And this is in particular at pages 14

11    and 15 of its tendered brief.

12         I grant leave in that regard, and I take those pages

13    under advisement.  I will take them under advisement if and

14    when I come to a time where I'm granting preliminary

15    injunctive relief.

16         I think that that point that was made by *amicus* is a

17    unique perspective and a unique viewpoint from the perspective

18    of patients who are not otherwise directly represented in this

19    litigation.

20         Otherwise I deny the motion, and here are my reasons

21    for doing that.  So no rule governs *amicus* appearances in the

22    district court.  But Federal Rule of Appellate Procedure 29

23    provides that a motion for leave to file an *amicus* brief

24    should state, one, the movant's interest and, two, the reasons

25    why the *amicus* brief is beneficial and aids in the disposition

1   of the case.

2        The Seventh Circuit's approach is, and I'm quoting

3   now from *National Organization For Women*, a 2000 Seventh

4   Circuit case, the approach is, quote, "Not to grant rote

5   permission to file an *amicus curiae* brief and never to grant

6   permission to file an *amicus curiae* brief that essentially

7   merely duplicates the brief of one of the parties.

8        "Instead, the Seventh Circuit grants permission to

9   file an *amicus* brief only when, one, a party is not adequately

10  represented and usually is not represented at all or, two,

11  when the would be amicus has a direct interest in another

12  case, and the case in which he seeks permission to file an

13  *amicus curiae* brief may by operation of *stare decisis* or *res*

14  *judicata* materially affect that interest or, three, when the

15  *amicus* has a unique perspective or information that can assist

16  the Court of Appeals beyond what the parties are able to do."

17  And that language is also from the same *National Organization*

18  *For Women* case.

19       I don't think that those criteria have been satisfied

20  here, with the exception that I've already noted, which is why

21  I'm exercising my discretion in the manner that I'm exercising

22  it.

23       AbbVie is clearly represented and by more than

24  capable counsel.  *Amicus* has not articulated a direct interest

25  in another case that would materially be affected by the

1   operation of *stare decisis* or *res judicata* by this matter.

2   And having reviewed AbbVie's motion for a preliminary

3   injunction, as well as *amicus*'s tendered brief, I come to the

4   conclusion that none of the considerations that are

5   articulated by *amicus*, again, with the exception that I've

6   already noted, have been overlooked by AbbVie.  And so in this

7   regard I agree with defendant, the tendered brief from *amicus*

8   essentially covers the same ground as AbbVie.

9          I want to add that at this juncture with this pending

10  preliminary injunction hearing, what I could have found

11  particularly helpful to hear from a patient's perspective

12  potentially is more explanation, more assessment as to how the

13  defendant's allegedly unlawful actions are ongoing and causing

14  immediate harm to the consumers.  But I don't see that in

15  *amicus*'s brief.

16         Instead, I see a discussion of harm that was

17  allegedly caused by Payer Matrix, but, again, nothing

18  supplemental on top of what AbbVie has already articulated

19  that would explain why from a patient's perspective,

20  specifically from a patient's perspective equitable immediate

21  relief is warranted.

22         I'll add that my decision is influenced by the

23  Seventh Circuit's decision in 2003 *Voices For Choices*, where

24  the Seventh Circuit denied a motion for leave to file *amicus*.

25  In doing so, the Court stated that "The Judges of this Court

1    will not grant rote permission to file such a brief, and in

2    particular, they will deny permission to file an *amicus* brief

3    that essentially duplicates a party's brief," and then it goes

4    on to give a host of reasons.

5          "Judges have heavy caseloads and, therefore, need to

6    minimize extraneous reading; amicus briefs, often solicited by

7    parties, may be used to make an end run around court-imposed

8    limitations on the length of parties' briefs; the time and

9    other resources required for the preparation and study of and

10   response to *amicus* briefs drives up the cost of litigation;

11   and the filing of an *amicus* brief is often an attempt to

12   inject interest group politics into the federal appeals

13   process."

14         I don't think it's necessary for me to tick through

15   each of those factors and explain why I think each one of

16   those did or did not resonate with me in making my ruling.  I

17   will say that the reasons in general do resonate with me as I

18   rule on this motion.

19         And, finally, I was not particularly persuaded by the

20   *Johnson & Johnson* case out of New Jersey, the District of New

21   Jersey, decided on January 25, 2023, where the district court

22   there granted a motion for leave to file an *amicus* brief

23   because it, quote, "contributed to the Court's understanding

24   of the public harm from the defendant's program."  There was

25   limited reasoning given there, other than what I just cited,

1    and the reasoning that was given doesn't bear on the

2    preliminary injunction motion that's at issue.

3         So those are my reasons for denying the motion by

4    *amicus* to file its brief, although I obviously do appreciate

5    your effort, Mr. Birk, in putting together that brief.

6         All right.  So then the next topic, the next item on

7    the agenda is a reply brief in advance of the preliminary

8    injunction hearing.

9         So I have studied AbbVie's motion.  I have studied

10   the defendant's opposition.  I'm in no way pretending that I

11   have mastered the universe of materials.  But I and my law

12   clerk, we have looked at them enough that I have come to the

13   conclusion that a reply would be useful to me on a variety of

14   legal points that I'm going to lay out.

15        And I want to emphasize the legal piece of this,

16   because I don't think I need a reply brief that spends more

17   time previewing the evidence that I will hear at the

18   preliminary injunction hearing.  What I would like is a reply

19   brief that better situates me to go into the hearing with the

20   appropriate legal framework so that I can appropriately assess

21   and analyze the evidence that I'm hearing.

22        So what I'll do next is outline a series of questions

23   that I would like AbbVie to address in a reply brief.  Some of

24   them are going to sound like mixed questions of law and fact.

25   But, again, I really want to emphasize that what I'm looking

1  for in a reply brief is more of a focus on legal authority and

2  legal analysis than a lengthier recitation of additional facts

3  that will come to light at the hearing.

4       Okay.  So having said that, one question I have

5  arises in the context of the ICFA claim, and in particular on

6  the consumer nexus factor.  So I would like a reply brief to

7  explain in more detail how the defendant's conduct has a

8  consumer nexus such that AbbVie may bring an action under the

9  ICFA as a nonconsumer.

10       And, in particular, I'm thinking about the factors in

11  *Patel v. Zillow*.  That's a Northern District of Illinois case

12  from 2018, 2018 Westlaw 2096453.

13       And, in particular, the first factor that's outlined

14  in *Patel* would ask:  How are AbbVie's actions akin to a

15  consumer's actions so as to establish a link between them and

16  the consumers?  So that's one topic.

17       Another question I have has to do with the drug

18  importation portion of the scheme.  And this is where I think

19  there is going to be I think a need for a little bit more of a

20  factual answer, but then I'll get to the sort of underlying

21  legal question I have.

22       It's unclear to me based on the briefs, and it's

23  entirely possible that I just need to study them some more,

24  but it's unclear to me at this point whether AbbVie is arguing

25  that the drugs that RxFree4Me is importing from abroad,

whether those are not actually AbbVie-branded drugs, or

whether AbbVie is arguing that the drugs are, yes, they're

AbbVie-branded drugs, but they have not been subject to the

same regulatory requirements as AbbVie-branded drugs would

have been subject to if they were being sold in the United

States.  And so there is a clarification on that that would be

helpful.

And then the follow-up question is whether defendant

can be on the hook for misrepresentations about the drug

importation program, if it's RxFree4Me doing the actual

importing, or is there a legal theory under which Payer

Matrix -- or is there a theory that Payer Matrix is endorsing

RxFree4Me's actions by partnering with them, and if so, where

is the legal authority to support that?

All right.  The next topic, the Lanham Act false

advertising claim.  Payer Matrix makes the point in its

opposition brief that the communications that plaintiff, that

AbbVie has pointed to for purposes of its Lanham Act claim are

not commercial advertising or promotion because they're not

directed to anonymous recipients and because they're not made

for the purpose of influencing consumers to buy Payer Matrix's

good or services.

And, in particular, I think cases that support that

position are, on the first point, the need for anonymous

recipients, I'm relying on and I think Payer Matrix also

1     relies on *First Health Group Corporation*. It's a Seventh

2     Circuit case from 2001, 269 F.3d 800.

3           And the second point, the influence point, a case

4     that stands for that proposition is *Rovanco*, R-O-V-A-N-C-O,

5     *Piping Systems*, a Northern District of Illinois case from

6     2022, and the citation for that is 2022 Westlaw 683690.

7           So if I'm wrong about the law, I'd like AbbVie to use

8     its reply brief to tell me that. If I'm right about the law,

9     and you think your evidence will satisfy the relevant legal

10     standard, I think you could just say that in your reply brief,

11     and I'll wait to hear the evidence at the hearing. But that

12     is a question that I have at this time.

13           In the same Lanham Act false advertising bucket,

14     Payer Matrix argues that finding that a communication

15     qualifies for purposes of that claim requires a finding that

16     the communication is, quote, "literally false" and that that's

17     a rigorous standard requiring a message to be unambiguous.

18           A case that stands for that proposition is *Bidi*,

19     B-I-D-I, *Vapor*, V-A-P-O-R, a 2021 case here from the Northern

20     District, 543 F.Supp.3d 619.

21           Similarly, is that a correct statement of the law?

22     If not, tell me why not. If it is, and you think your

23     evidence, if AbbVie thinks that its evidence will satisfy the

24     relevant legal standard, you can tell me that in your reply

25     brief, and then I'll wait to hear the evidence at the hearing.

1          And then one last Lanham Act false advertising

2   question that I have.  Payer Matrix argues that some of the

3   materials that AbbVie cites in support of its false

4   advertising claim were made by third parties that Payer

5   Matrix, quote, "did not bless."

6          I'd like to hear AbbVie's response to that, meaning

7   can Payer Matrix be liable under the Lanham Act for statements

8   made by third parties?  If so, what's the legal authority for

9   that?  Are there particular circumstances under which the

10  answer would be yes?  Are there circumstances where I think we

11  would all have to agree that the answer would be no?  But some

12  discussion about what those circumstances might be would be

13  helpful.

14         And if the answer is that Payer Matrix did, in fact,

15  bless the specific materials and AbbVie is prepared to

16  establish that at the evidentiary hearing, I think you can

17  just say that in your reply brief, and I'll wait to hear the

18  evidence at the hearing.

19         So those are my questions.

20         In terms of length, I think this is doable in 15

21  pages.  And in terms of a deadline, I'm really not trying to

22  ruin anyone's holiday, so whatever deadline -- obviously I

23  need it, you know, within some amount of time before the

24  hearing, but I really don't need it like the day after New

25  Year's.  So what would work for AbbVie?

1          MS. HAYS:  Does January 10th work, Judge?

2          THE COURT:  Yeah, that works for me.

3          And I don't anticipate needing a surreply.  And I

4    suppose a related question that might be percolating is would

5    there be post-hearing briefs.  And that's an open question for

6    me at this time.

7          MS. HAYS:  Okay.  One I guess follow-up, Your Honor,

8    on the reply brief.  Since we do not have experts testifying,

9    and they've submitted some, you know, new information in their

10   expert reports, we would like to submit rebuttal declarations

11   with our reply brief.

12         THE COURT:  To support the legal arguments or are

13   these --

14         MS. HAYS:  These are important facts that we're not

15   going to be able to -- I mean, I guess we could -- because

16   we're not going to have a live witness to testify to them.

17         THE COURT:  Yeah, and I wanted to ask -- well, let's

18   talk about that for purposes of the next item, which was the

19   scope and the logistics of the hearing, because I was curious,

20   if I remember correctly, the proposal was that there would be

21   some live witnesses and some testimony that would be based on

22   declarations or affidavits that the parties have already put

23   together.

24         I assumed, because this is more like a bench trial,

25   there would be no like reading of -- no one would be using

1     time in court --

2              MS. HAYS:  Correct.

3              THE COURT:  -- to painfully read these declarations.

4              MS. HAYS:  Yes.

5              THE COURT:  Okay.  Sorry, I've been doing a lot of

6     talking, and I have not -- I don't want to be remiss in

7     letting Payer Matrix chime in at any point.  So Mr. Poell --

8     am I saying that correctly?

9              MR. POELL:  Thank you for asking, Your Honor.  It's

10    the story of my life.  It's actually pronounced Poell.

11             THE COURT:  Poell?

12             MR. POELL:  Yes, rhymes with hail.

13             THE COURT:  Oh, well, that's much easier.  And I do

14    not have a similar rhyming tip to give people for my last

15    name, so I'm actually quite jealous of you.

16             Yeah, obviously feel free to interrupt or chime in at

17    any point.  But I don't --

18             MR. POELL:  Yeah, I mean, Your Honor, I think all I

19    would have to say at this point, you know, regarding the reply

20    brief, understood that, you know, I think we're fine with

21    obviously if Your Honor wants to hear a reply brief on those

22    narrow legal issues with respect to Your Honor's ruling, then

23    we have no opposition to that.

24             We would object to further declarations, rebuttal

25    declarations being filed by AbbVie, unless they somehow relate

1  directly to these questions.  We believe that there is plenty

2  of experts' testimony that's been filed by AbbVie in this case

3  already.  So I believe there should be some compelling need or

4  burden on AbbVie to demonstrate why they believe still more

5  expert declarations would be required in the context of what

6  sounds like a pretty narrow reply brief on what Your Honor

7  described as fairly narrow legal issues.

8           THE COURT:  Yeah.  I guess for me there are two

9  separate questions.  There is the information that I would

10  like to see helpful, points of law that I would find helpful

11  to see addressed more comprehensively in a reply brief.

12           Then there is the second question of really like

13  whether AbbVie is permitted to introduce into the record

14  additional facts that I can rely on.  And I say "facts" in the

15  form of declarations or affidavits from experts.  That's

16  obviously a contested position in light of what Mr. Poell just

17  said.

18           My suggestion is that the parties use the briefing

19  schedule that's already in place regarding motions to exclude

20  evidence as the place to tee that up.

21           MR. POELL:  Fair enough, Your Honor.  Thank you.

22           MS. HAYS:  I guess, Your Honor, so a couple things.

23  One, we got, and though there were two productions, November

24  22nd, this is after we filed our brief, and December 6th,

25  these are critical portions of the patient files, very helpful

1   for our case, we've been asking for them since December of

2   2023, but when the case was put on hold, Payer Matrix's

3   counsel said they don't want to address it until after.  So

4   the day after you ruled on our motion to amend the first

5   amended complaint, we reached out, a lot of discussions back

6   and forth, ultimately got these very important documents in

7   November and December.  So we --

8           THE COURT:  November and December of 2024, just now?

9           MS. HAYS:  Correct, Your Honor.

10          THE COURT:  What are these patient files?

11          MS. HAYS:  So they're the electronic patient files.

12  And our position was the entire files, you know, these

13  portions were very responsive to expedited discovery.

14          The portion that they withheld, there is a section in

15  each file called override notes for each patient.  It gives

16  unique information that we had from no other source of, for

17  this particular patient, did Payer Matrix already have

18  preapproval from the plan sponsors to issued overrides, which

19  as you know is a key portion of the case.

20          And then it also gave patient specific cost share

21  information, their own insurance cost share information, which

22  enables us to tie particular patients and particular instances

23  of fraud, which we didn't have before.  The only --

24          THE COURT:  Sorry, go ahead.

25          MS. HAYS:  Go ahead, Your Honor.

1          THE COURT:  Well, I guess one question I have is

2   whether these patient files or this newly produced information

3   bears on what I'll call PAP and CAP activity that has taken

4   place post July of 2023.  And let me explain my thinking

5   there, and you guys can correct me if my understanding at this

6   juncture of the relevant facts is off.

7          But my understanding is that July of 2023 would be a

8   time where -- and I recognize it's disputed to some degree --

9   but I think Payer Matrix would say that the last time that we

10  tried to enroll patients working with us in the underinsured

11  or uninsured programs that AbbVie has in place would have been

12  in July of 2023.

13         In response to that, AbbVie seems to be saying:  Not

14  true.  You shouldn't take those representations at face value,

15  because we have evidence that presumably will be presented at

16  the evidentiary hearing to support the argument that

17  injunctive relief is required because this harm is ongoing,

18  the injury is ongoing, i.e., Payer Matrix is still involved in

19  this type of activity.

20         And so going back to these patient files, I guess I'm

21  more likely to view those patient files as relevant to the

22  preliminary injunction hearing if there is information in

23  there that supports the argument that there is a recent

24  injury, because I'm very focused at this point, because it's a

25  motion for preliminary injunction, I'm very focused on this

1   point of is the harm ongoing?  Is the harm irreparable?  Can

2   there be no monetary -- is it really the case that there can

3   be no monetary damages?

4          And so if the data that we're talking about would

5   support an argument that, you know, back in the day that all

6   of this was going on, all of this being that Payer Matrix had

7   preapproval to enter in an override, then I find that less

8   relevant to the question of preliminary injunctive relief.

9   It's obviously still relevant to the allegations writ large,

10  but less relevant, it seems to me less relevant to the

11  question of preliminary injunctive relief.

12         MS. HAYS:  I think it goes to likelihood of success

13  on the merits, Your Honor, not the irreparable harm continuing

14  conduct piece.

15         THE COURT:  Okay.

16         MS. HAYS:  These particular files.

17         THE COURT:  Okay.

18         MS. HAYS:  But it is really important information in

19  terms of the case and the strength of our case.  And there is

20  a lot of representations that were made in the declarations

21  where there is contradictory information and contradictory

22  analysis by our experts.

23         And then I guess the other one that I'd put at the

24  top of the list, and this is relevant to the continuing

25  conduct, the importation piece, both Ms. Hoefner from Payer

1  Matrix and then also Mr. Niarchos, if I'm saying that

2  correctly, one of their experts, provided new information --

3          THE COURT:  I think that one is Niarchos.

4          MS. HAYS:  Niarchos.

5          THE COURT:  As a fellow Greek, that is how you would

6  pronounce it, yes.

7          MS. HAYS:  Niarchos, Niarchos, okay.

8          On the importation piece, they provided information,

9  and we have not had a chance to respond to that.  So AbbVie's

10 internal, someone at AbbVie would like to do a short

11 declaration on that piece.

12         THE COURT:  I guess going back to my original

13 proposal, what's the reason why this couldn't be briefed as

14 part of, this dispute, right, because there is clearly a

15 dispute, couldn't be raised as part of for the motions in

16 limine?

17         MS. HAYS:  So it would be the proposal -- so we would

18 put on our exhibit list that we're going to submit this

19 declaration, and then they would have an opportunity to --

20         THE COURT:  Yeah, I forget the timing of what comes

21 first, right.  I think the exhibit list to me, to the Court,

22 only comes like five days before the hearing.

23         MS. HAYS:  Correct.

24         THE COURT:  I forget when the parties are supposed to

25 exchange exhibit lists.

 1          MS. HAYS:  So we're exchanging on, so the schedule --

 2    so the motions in limine currently are set to be due on

 3    January 7th.  Responses are due on January 14th.  We

 4    internally discussed exchanging lists on the 7th --

 5          THE COURT:  Okay.

 6          MS. HAYS:  -- which doesn't --

 7          THE COURT:  Yeah, I guess putting on a trial

 8    preparation hat, this strikes me as how you would handle

 9    things in advance of a trial, right, that the parties exchange

10    their exhibit lists, and then that prompts motions in limine

11    along, you know, along the lines of party put X exhibit on

12    their list, we think it should be stricken.

13          I realize here, because the deadlines for exchanging

14    or compiling the exhibit lists match the filing of the motion

15    in limine, normally I would say that's a problem, but it seems

16    like we're fleshing out -- everyone is on notice at this point

17    that these declarations are something that AbbVie would want

18    admitted at the hearing.

19          And so whether AbbVie wants to file an affirmative

20    motion to have the declarations admitted and then Payer Matrix

21    can oppose that, or Payer Matrix wants to preemptively file a

22    motion to exclude those declarations and then AbbVie responds,

23    I think the parties can sort that out.

24          My guess is that AbbVie is going to be in a better

25    position to affirmatively move for the admission of that

1    additional evidence only because you're better acquainted with

2    what the contents of those declarations and how you intend to

3    use it.

4         MS. HAYS:  That makes --

5         THE COURT:  Mr. Poell, do you want to chime in on

6    this?

7         MR. POELL:  Yes, Your Honor.  This point just from a

8    scheduling matter, how this could potentially affect the

9    parties' January 7th deadline to exchange exhibit lists, I

10   believe that you suggested and Ms. Hays acquiesced to a

11   January 10th supply date.  So if that's three days after the

12   January 7th deadline, it seems like we may have to, you know,

13   redo some of those deadlines to make sure that -- I mean, if

14   they are going to file supplemental declarations with their

15   reply brief on the 10th, it would seem to me that the 7th

16   would be a premature date to be exchanging exhibits because we

17   don't know what they're going to file.

18        THE COURT:  Yeah.  I guess I was separating the two,

19   Mr. Poell, and saying that the declarations, the issue of the

20   admissibility of declarations would be dealt with via motion

21   in limine practice with the relevant dates being the 7th and

22   the 14th.

23        The reply brief to me sort of stands alone from the

24   declarations, because the reply brief is meant to address what

25   I'll call pure, more pure legal issues.

1    MR. POELL:  Understood.  One additional point I would

2  like to make is that Ms. Hays noted that Payer Matrix has made

3  supplemental productions.  AbbVie has also made several

4  supplemental productions in the interim, which some of which

5  were after the filing of our brief, again, them trying to

6  allege that we're still involved in the PAP application

7  process, even though any PAP applications that may have been

8  submitted had no involvement whatsoever from Payer Matrix.

9  AbbVie is trying to stitch it together through instances and

10  with their own investigation.

11    So, I mean, to the extent that there was additional

12  evidence that they have produced in support of their claims

13  after the filing of our brief, you know, naturally I think I

14  just wanted to confirm that, you know, that would be fair

15  game, and we would have the appropriate opportunity to rebut

16  that additional evidence as we had done, you know, previously

17  with our own brief that we filed on the 2nd.

18    THE COURT:  Yeah, if I'm understanding you correctly,

19  Mr. Poell, I mean, I guess I'm not going to give either side

20  carte blanche as to what is being admitted and what is not

21  being admitted at this point.  But I guess in response to what

22  you just said, I'm obviously not -- what's good for the goose

23  is good for the gander.

24    I certainly don't envision a scenario in which I will

25  say that AbbVie can rely on recent productions of evidence,

1   but Payer Matrix cannot.  And that's all --

2              MR. POELL:  Yeah.

3              THE COURT:  That's all going to be subject to

4   particular relevance -- I'm sorry.  Go ahead, Mr. Poell.

5              MR. POELL:  I had no other point, Your Honor.  Sorry.

6              THE COURT:  Okay.  Yeah, I guess what I --

7              MR. POELL:  I was basically agreeing with you.

8              THE COURT:  Okay.  We're all in agreement then.

9   Everyone can try to get in whatever they would like to get in,

10  and I will be evenhanded in terms of not penalizing a party,

11  not holding it against a party that particular evidence was

12  produced by the other side at a later date.

13             My approach is really going to be more focused on

14  relevance to the questions that are teed up for the

15  preliminary injunction hearing.

16             MS. HAYS:  Your Honor, one more kind of put it in the

17  legal arguments for the reply brief.  The other area that we

18  think is very important we did not talk about before because

19  we had to wait to see what Payer Matrix was going to say was

20  on voluntary cessation.  So our position is they haven't met

21  any of the elements.  I mean, they're basically saying that

22  we've ceased the conduct.  And so that's all legal argument,

23  well, it's largely legal argument that --

24             THE COURT:  If you want to add that to the reply

25  brief, that would be helpful.

1          MS. HAYS:  Okay.

2          THE COURT:  That would be helpful for the Court to

3   hear more on that.  But, again, I mean, on the legal piece of

4   it.

5          MS. HAYS:  Yes.

6          THE COURT:  I understand that there is a factual

7   dispute as to whether or not there in fact has been cessation

8   of activities.

9          While we're on the topic of the motions to exclude

10  evidence, I mean, just a reminder, and I know counsel on both

11  sides are quite experienced, but just a reminder to the

12  parties that because this is effectively a bench trial,

13  arguments regarding the irrelevance of the evidence or its

14  prejudicial nature are going to carry less weight with me.

15  I'd like to think that I'm more capable than the average juror

16  in parsing that out.  And so I don't think the parties should

17  feel compelled to file the full onslaught of motions in limine

18  that you would typically file if this were in fact a jury

19  trial.

20         In terms of the logistics for the hearing, so we're

21  scheduled to start on a Wednesday, Wednesday the 29th.  And

22  I've reserved that Thursday and Friday as well.

23         My plan is to start the hearing on the 29th at 10:00

24  a.m. and to conclude by 4:00, and then obviously a lunch break

25  and an opportunity for my court reporter to stretch her

1  fingers.

2      And so that's why I think in some email communication

3  with the parties indicated that I would be reserving the 31st

4  as well, because I think based on the proposed plan that the

5  parties had put together, if we kind of gritted our teeth, we

6  could get through it in two days.  I don't think we need to.

7      And so in an ideal world what would happen on the

8  29th and 30th are opening statements and presentation from

9  evidence from live witnesses, and then the 31st would be for

10 closing arguments.

11     Sure.  Go ahead, Ms. Hays.

12     MS. HAYS:  I have a few logistic --

13     MR. POELL:  I think that sounds like a very

14 reasonable prediction to me, Your Honor, on scheduling.

15     MS. HAYS:  I agree, Your Honor.

16     So in terms of I think we're going to have a hot seat

17 operator just for purposes we are going to play a few videos.

18     THE COURT:  What is a hot seat operator?

19     MS. HAYS:  To help with the technology --

20     THE COURT:  Okay.

21     MS. HAYS:  -- because I'm not good at that.

22     THE COURT:  Neither am I.

23     MS. HAYS:  And so he's coming in on the 28th and

24 wanted -- is there a point person where he can just see the

25 courtroom and make sure that's all set up ahead of time?

1          THE COURT:  I think if he reaches out to --

2          MR. POELL:  We will have the same, we will have the

3    same person, Your Honor.  So maybe we can coordinate on that.

4          THE COURT:  Okay, yeah.  I think if both parties --

5          MR. POELL:  If that can be provided at the same time,

6    scope it out.

7          THE COURT:  I think if both parties reach out to my

8    courtroom deputy, she can put you in touch with the

9    appropriate IT person within the courthouse.

10         MS. HAYS:  Great.  And then Your Honor had on the

11   previous order that for witness lists are due on January 7th.

12   We each are just planning to call the one live witness.

13         THE COURT:  Okay.

14         MS. HAYS:  Would Your Honor like that in a formal --

15         THE COURT:  No.  That's fine.  It's the same witness

16   that's listed in the case management report?

17         MS. HAYS:  Yes.

18         THE COURT:  Okay.  That's fine.  I don't need

19   additional paper on that.  Okay.

20         MS. HAYS:  And then my last question, or I guess it's

21   an exhibit plan if Your Honor is in agreement, for those

22   exhibits that we're going to publish on an Elmo or video, and

23   it's patient related, we plan to redact, and so when we share

24   our exhibits with Payer Matrix's counsel, they'll see the plan

25   in terms of here is what we redacted.  But that's the general

1    plan.

2              THE COURT:  That PII would be redacted from the

3    patient?

4              MS. HAYS:  In what is going to be published.

5              THE COURT:  I mean, I'm fine with that, and I think

6    that adheres to the local rules.

7              Mr. Poell, do you take a different position?

8              MR. POELL:  No, I don't, Your Honor.

9              THE COURT:  Okay.  That's fine.

10             Anything else that we need to discuss with respect to

11   the logistics on the hearing?

12             MS. HAYS:  Your Honor, one question.  Because we're

13   at an involuntary cessation portion, would 20 pages be

14   agreeable?

15             THE COURT:  That's fine.

16             MS. HAYS:  Thank you.

17             THE COURT:  And also just --

18             MR. POELL:  Your Honor --

19             THE COURT:  Go ahead, Mr. Poell.

20             MR. POELL:  Yeah, just a few points at the end.  Just

21   one procedural point.  I mean, I just need to review the order

22   again, but as far as the length of the openings and the

23   presentation of evidence, I believe, Valarie, that we had

24   agreed like last year to limits on, you know, the time of the

25   closing, the opening, the direct, the cross.

1         I just wanted to clarify with Your Honor, those same

2    time limits that we agreed to last year would still be in

3    effect or if we should we propose new ones?

4         THE COURT:  Assuming the parties are still on the

5    same page with respect to the time limits that were proposed

6    in the joint case management report, those time limits are

7    fine with me, too.

8         MR. POELL:  Okay.

9         MS. HAYS:  One question on that point, Your Honor.

10   With respect to opening statements, and we're fine with the

11   time limits, but we did give each other 15 minutes per side

12   for opening statements.  So just in terms of what Your Honor

13   would be most interested in us focusing on in what's a very

14   short period of time for a big case.

15        THE COURT:  Yeah, yeah, you read my mind, because one

16   thing I wanted to talk about, and I have talked about this a

17   little bit already, is heading into the hearing, top of mind

18   again is this question of the recency of the injury and the

19   ongoing nature of the activity.  So I think it would be

20   beneficial for both sides to focus on that piece of it.

21        And I say that again because we're in a preliminary

22   injunction posture, and I would be less concerned about that

23   if this was anything different, but because of the

24   extraordinary nature of the relief that's being sought here, I

25   really do feel like I need to be sufficiently convinced that

1    there is ongoing irreparable harm.

2           And relatedly, I'd appreciate hearing evidence at the

3    hearing, and so then this should influence your decision about

4    how much time to devote to this in the opening statements, but

5    this question of why monetary damages would be inadequate

6    here.  I think it would be beneficial for me if the parties

7    focused on those points.

8           MS. HAYS:  Thank you, Your Honor.

9           MR. POELL:  Thank you, Your Honor.

10          THE COURT:  So the last thing I have on my agenda is

11   just a schedule on the motion to dismiss.  And I know that the

12   parties had competing proposals on that.

13          I'm going to go more with Payer Matrix's position.

14   The extended briefing schedule that they proposed makes more

15   sense to me.  I think it increases the likelihood that I will

16   issue a written ruling on the motion for preliminary

17   injunction that I think would inform the parties' motion to

18   dismiss briefing.

19          So I'll set the following deadlines:  April 1st for

20   the motion to dismiss.  May 1st for the response.  And then

21   May 15th for a reply.

22          MR. POELL:  And, Your Honor, one housekeeping item.

23   You know, mindful of the fact that we're dealing with a

24   complaint that I think is in excess of 500 paragraphs, you

25   know, I don't think 15 pages is going to be enough for us to

1    address those arguments.  And certainly we can address that in

2    due course, and maybe that's the best way to do it.  I just

3    wanted to I guess flag for the Court that I think we

4    inevitably will be seeking additional pages beyond the 15

5    pages, just because it will be very difficult to brief, you

6    know, RICO claims alone with the I believe nine additional

7    causes of action alleged in the first amended complaint.

8           Again, I'm not asking Your Honor to make a ruling at

9    this time.  I just wanted to flag that because I anticipate

10   that we will need -- you know, I don't want to inundate the

11   Court with more than is necessary, but it will definitely be

12   more than 15 pages for our brief, I believe.

13          THE COURT:  Yeah.  I think that's a fair prediction.

14   I just ask the parties to confer.  Yeah, if you end up

15   agreeing as to how long the motion and the responses will be

16   on both sides, as long as it's an agreement, I will almost

17   certainly agree with the parties.  So I'll look for that

18   motion when we get closer to those dates.

19          MR. POELL:  Thank you, Your Honor.

20          THE COURT:  Anything further?

21          MS. HAYS:  Not from AbbVie, Your Honor.

22          THE COURT:  What about from Payer Matrix?

23          MR. POELL:  One final point, Your Honor, just on the

24   lack of the surreply.  And by no means do we want to inundate

25   the Court with more pages than it already has.  I guess to the

1    extent that AbbVie would have the last word here on briefing,

2    you know, I think we would foresee the need for post-hearing

3    briefing.  Again, not asking for a ruling at this time.  But,

4    you know, we're not asking for a surreply at this point.  And

5    we believe the Court would be sufficiently educated and have

6    what it needs to prepare for this hearing or of course rule

7    for that additional evidence.

8            But I just wanted to throw that out there, that, you

9    know, to the extent AbbVie is addressing these legal issues in

10   anticipation of the hearing, we believe that it would be

11   beneficial once the hearing is concluded to have post-trial

12   briefing just to the extent, you know, Payer Matrix could

13   respond to the points that AbbVie makes in its reply brief

14   prior to the hearing.

15           THE COURT:  Yeah, I mean, that position makes sense

16   to me.  I will say in the spirit of transparency that a

17   hesitation I have in ordering post-hearing briefing is that it

18   will inevitably delay my ruling on the motion for preliminary

19   injunction.  And given that, I mean, on the one hand, it's a

20   motion for preliminary injunction, which by definition means

21   that things need to move quickly.

22           On the other hand, the point is also not lost on me

23   that this case has now been pending for close to two years,

24   and for a variety of factors we still haven't had the

25   preliminary injunction hearing.  And so maybe the urgency for

1   my ruling is not quite the same as it may have been in a more

2   expedited proceeding.

3          I guess I'm not making a ruling right now.  I haven't

4   decided whether post-hearing briefing would be helpful.  I

5   really do think that that's a decision that I will come to

6   during the course of the hearing itself.

7          I'm just putting that out there for the parties'

8   consideration that a factor that in my mind militates against

9   requiring post-hearing briefing is that it's just going to

10  slow down the ruling process.

11         MR. POELL:  Understood, Your Honor.  And we, you

12  know, we agree that it's something that can be deferred until

13  after the hearing as to whether that's necessary.

14         THE COURT:  Okay.  All right.  So I think that takes

15  care of everything.  I will --

16         MR. BIRK:  One question, Your Honor.

17         THE COURT:  Sure.  Sorry, Mr. Birk.

18         MR. BIRK:  Thanks.  When you said that the Court

19  would take pages 14 and 15 under advisement, does that mean

20  you do not want us to file the relevant portions separately?

21         THE COURT:  I don't think you need to do anything

22  separate, Mr. Birk, yeah.

23         MR. BIRK:  Thank you.

24         THE COURT:  Okay.  All right.  Thanks to everyone.

25  I'll see you next month.

1        MS. HAYS:  Thank you, Your Honor.

2        THE COURT:  Happy holidays.

3        MS. HAYS:  Happy holidays.

4        MR. POELL:  Thank you, Your Honor.  Happy holidays.

5        MR. RAYMOND:  Happy holidays.

6     (Proceedings concluded)

7              C E R T I F I C A T E

8        I, Jennifer S. Costales, do hereby certify that the

9    foregoing is a complete, true, and accurate transcript of the

10   proceedings had in the above-entitled case before the

11   Honorable GEORGIA N. ALEXAKIS, one of the judges of said

12   Court, at Chicago, Illinois, on December 18, 2024.

13

14                      */s/ Jennifer Costales, CRR, RMR, CRC*

15                      Official Court Reporter

16                      United States District Court

17                      Northern District of Illinois

18                      Eastern Division

19

20

21

22

23

24

25